**In re Robert Edward McDERMOTT and Lillian Medina McDermott, Debtors.**

**No. 6:09–bk–10942–KSJ.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

March 31, 2010.

Kenneth D. Herron, Jr., Orlando, FL, for Debtors.

*FINDINGS OF FACT AND CONCLU-SIONS OF LAW ON TRUSTEE'S OBJECTION TO DEBTORS' EX-EMPTION CLAIM*

KAREN S. JENNEMANN, Bankruptcy Judge.

The debtors claim an exemption under Florida Statute Section 222.11 for funds they contend represent Mr. McDermott's "earnings" as a head of family. The Chapter 7 trustee objects, arguing the debtors cannot claim exemption under Section 222.11 because the funds do not meet the statutory definition of "earnings" but instead are equity withdrawals from the debtors' business.[1] Because the Court concludes that the funds are not "earnings," the trustee's objection is sustained.

On July 29, 2009 (the "Petition Date"), both the debtors and their closely held business, GLR Ventures, In c.[2] ("GLR") filed petitions for relief under Chapter 7 of the Bankruptcy Code.[3] Mr. McDermott signed GLR's petition in his capacity as President of GLR (Trustee's Ex. 4). The debtors are listed as owners of 67 percent of the company on GLR's Statement of Financial Affairs (Trustee's Ex. 7), and the Robert McDermott Retirement Plan is listed as owner of 33 percent of the company. The debtors also are listed as creditors holding an unsecured claim for a "loan to business" in the amount of $72,000 on GLR's Schedule F–Creditors Holding Unsecured Nonpriority Claims (Trustee's Ex. 5).

In their Schedule C (Doc. No. 1), the debtors claimed an exemption under Section 222.11 for funds held in a SunTrust checking account in the amount of $54,079.59. The debtors contend that these funds represent Mr. McDermott's wages earned in the course of his employment at GLR from March 2009 through July 2009. To support this contention, the debtors submitted into evidence SunTrust statements for the period from March 23, 2009, through July 29, 2009 (Debtors' Ex. 1), and pay stubs from GLR to Mr. McDermott for the period March 25, 2009, through July 27, 2009 (Debtors' Ex. 2). The debtors' exhibits show that during this period GLR paid Mr. McDermott a pre-tax total aggregate amount of $64,500,[4] an after-tax total aggregate amount of $60,892, and that Mr. McDermott deposited this after-tax amount into the SunTrust account. Notably, Mr. McDermott testified

---

1. This case was heard on November 10, 2009, on the trustee's Objection to Property Claimed as Exempt (Doc. No. 29) and the debtors' Response to Trustee's Objection (Doc. No. 31).

2. GLR's Case number is 6:09–bk–10941–KSJ.

3. Unless otherwise stated, all references to the Bankruptcy Code refer to Title 11 of the United States Code.

4. The pre-tax amounts and dates of the pay-stubs are as follows: (1) $7,500 on March 27, 2009; (2) $7,500 on May 1, 2009; (3) $12,000 on May 21, 2009; (4) $12,000 on June 17, 2009; (5) $13,500 July 1, 2009; (6) $12,000 on July 27, 2009.

that he also was paid a pre-tax amount of $7,500 on March 19, 2009, though a pays-tub for this payment was not included with the debtors' exhibits. Including this payment, Mr. McDermott's total aggregate pre-tax pay between March 19, 2009, and the Petition Date was $72,000, perhaps coincidentally, the exact amount for which the debtors scheduled an unsecured claim on GLR's Schedule F (Trustee's Ex. 5). The SunTrust statements show aggregate deposits in the amount of $61,065.75 for the period from March 19, 2009, through July 28, 2009.[5] On the Petition Date the balance of the SunTrust account was $55,079.59.

At hearing, Mr. McDermott testified that he was the President and General Manager of GLR and that his duties included handling all marketing, pricing, accounting, legal, and payroll issues, among others. He testified that there was no employment agreement between himself and GLR, and that he, along with three company managers and his wife, had full discretion over all hiring and compensation decisions. He further testified that when he started the company in 2005, he set a monthly wage for himself in the amount of $12,000 as compensation for his services to GLR, but that he often would forego paychecks when the company was cash deficient. This testimony is supported by the debtors' Statement of Financial Affairs (Trustee's Ex. 2), which lists Mr. McDermott's 2008 income from GLR in the amount of $22,500 and 2007 income from GLR in the amount of $12,000. It is fur-

ther supported by Mr. McDermott's 2008 Federal Income Tax Return Form 1040 (Trustee's Ex. 3), which lists total wages on line 7 in the amount of $31,610.

The trustee contends that Mr. McDermott's services to GLR were essentially those of running and controlling a business and not those of an employee. As such, under the cases cited by the trustee,[6] none of Mr. McDermott's pay from GLR constitute exempt "earnings."

The debtors, in response, assert that Mr. McDermott is the head of family, that the funds in the SunTrust account are Mr. McDermott's earnings, and that Mr. McDermott has not agreed in writing that any portion of his earnings could be attached or garnished as required by Section 222.11(2)(b). The parties agree that Mr. McDermott is a head of family as defined in Section 222.11(1)(c). So the only issue before the Court is whether the funds Mr. McDermott received from GLR and deposited into the SunTrust account constitute "earnings" subject to exemption under Section 222.11(1)(a).

The objecting party has the burden of proving that an exemption claimed by the debtor is not properly claimed. Fed. R. Bankr.P. 4003(c)(2005). In this case, the debtors are claiming an exemption under Section 222.11, which provides that earnings of a head of family, such as Mr. McDermott, are not subject to claims of creditors.[7] Earnings are defined to include: "compensation paid or payable, in money of a sum certain, for personal ser-

---

5. The deposits shown on the statements are as follows: (1) $6,300 on March 19, 2009; (2) $6,126.25 on March 27, 2009; (3) $6,126.25 on May 6, 2009; (4) $10,282 on May 21, 2009; (5) $10,282 on June 24, 2009; (6) $11,667.25 on July 16, 2009; (7) $10,282 on July 28, 2009.

6. *In re Zamora,* 187 B.R. 783, 784 (Bankr. S.D.Fla.1995); *In re Manning,* 163 B.R. 380,

382 (Bankr.S.D.Fla.1994); *Brock v. Westport Recovery Corp.,* 832 So.2d 209 (Fla. 4th DCA 2002).

7. Bankruptcy Code Section 522(b) allows states to opt out of the exemption scheme provided by the the Code. Florida has opted out through provisions of the Florida Constitution and Florida Statute Sections 222.201–222.30.

vices or labor whether denominated as wages, salary, commission, or bonus." Fla. Stat. § 222.11(1)(a) If the funds Mr. McDermott received from GLR fit within the definition of earnings under Section 222.11, they are exempt. In order to sustain the objection, the trustee therefore must show that Mr. McDermott's paychecks do not qualify as earnings from personal services. *Zamora,* 187 B.R. at 784.

Two Florida bankruptcy courts have addressed whether compensation paid to a debtor from the debtor's own business qualifies as exempt earnings under Section 222.11. *Id.* at 785; *Manning,* 163 B.R. at 382. In both cases, the debtor ran a company in which he or his spouse held 100 percent of the company equity, there was no written employment agreement between the debtor and the company, and the debtor had complete discretion over his own compensation, sometimes choosing not to take any salary when the business was low on cash. Both courts found the amount of control the respective debtor exerted over the debtor's business sufficient to distinguish the debtor's activities from the kind of employment relationship contemplated by Section 222.11.

*Manning* held that "... a debtor that owns or controls a business cannot exempt the funds he distributes to himself from the business simply by calling the money wages. For the exemption to apply the debtor must not only perform personal services for the business, he must also receive regular compensation dictated by the terms of an arms-length employment agreement." 163 B.R. at 382. *Zamora,* extending the holding in *Manning,* flatly held "that earnings from a business controlled by a debtor are not exempt." 187 B.R. at 785.

The District Court of Appeal of Florida, Fourth District, also has ruled on this issue. *Brock,* 832 So.2d 209. Drawing

from both *Manning* and *Zamora,* the *Brock* Court stated that "[t]o decide whether monies from employment qualify for the section 222.11(2)(b) exemption, the relevant inquiry is often whether a person's employment is a salaried job or is in the nature of running a business." Under nearly identical facts as the cases cited above, the court held the business owner's earnings did not qualify for the exemption because he was running a family business. *Id.* at 212.

■ These cases are directly on point, and though none is binding on this Court's decision, the Court finds the reasoning behind them persuasive. A debtor who owns and runs his own business, without an arms-length employment agreement, and who has almost complete control and discretion over the timing and amount of his own compensation, cannot rely on Section 222.11 to exempt the funds. As the *Zamora* Court noted, the Florida Legislature certainly "did not intend to exempt all funds a person chooses to draw' from a business where the individual has full discretion over what expenses to pay or not pay in order to fund the draw." *Zamora,* 187 B.R. at 785.

Mr. McDermott clearly paid himself at his discretion for running the business that he and his wife jointly owned. The record shows significant inconsistencies concerning the timing and amount of Mr. McDermott's paychecks. At hearing, the debtors attempted to establish that Mr. McDermott was paid regularly by GLR, supposedly demonstrated by the paychecks Mr. McDermott received from GLR for the period from March 25, 2009, through July 28, 2009. This, however, is a myopic view of the facts.

Mr. McDermott's payment history discredits the debtors' contention that the 2009 paychecks he received from GLR were part of a well-established compensa-

tion protocol. Mr. McDermott received total compensation in the amount of $22,500 from GLR in 2008, and only $12,000 in 2007, for a total of $34,500 over this two-year period. Then, five months prior to the debtors and their business filing respective Chapter 7 petitions on the same day, Mr. McDermott began paying himself what would ultimately result in an aggregate, pre-tax amount of $72,000, more than *double* the amount he received from GLR for the prior *two years combined.* Not coincidentally, $72,000 is also the amount for which the debtors have scheduled an unsecured claim in GLR's bankruptcy for a "loan to business."

Because GLR also filed for Chapter 7 on the same day as the McDermotts, it is unlikely that GLR's business had picked up enough to allow Mr. McDermott to resume taking his "normal" paychecks. Indeed, the facts strongly indicate that the debtors' decision to pay Mr. McDermott $72,000 in the months leading up to both the debtors' bankruptcy petition and GLR's bankruptcy petition was an attempt to pay themselves before they paid their own or GLR's legitimate creditors.

Under no scenario do the checks Mr. McDermott received from GLR qualify as "earnings" under Section 222.11(1)(a). The debtors are trying to disguise an equity withdrawal as "earnings" to keep funds rightfully due to their creditors. The Court will sustain the trustee's objection. The amount of $54,079.59 is not exempt from claims of creditors under Section 222.11. A separate order consistent with these findings of fact and conclusions of law shall be entered.