**IN RE: John Joseph IM, a/k/a Exceptional Urgent Care Center I, Debtor.**

**Case No. 3:12–bk–3674–PMG**

United States Bankruptcy Court, M.D. Florida **Jacksonville Division**

July 25, 2013

Eugene H. Johnson, Johnson Law Firm PA, Jacksonville, FL, for Gregory K. Crews, Trustee.

Richard A. Perry, Richard A Perry, Attorney at Law, Ocala, FL, for Debtor.

Chapter 7

**ORDER ON (1) TRUSTEE'S OBJECTION TO DEBTOR'S CLAIM OF EXEMPTIONS, AND (2) TRUSTEE'S MOTION FOR TURNOVER**

PAUL M. GLENN, United States Bankruptcy Judge

**THIS CASE** came before the Court to consider (1) the Trustee's Objection to Debtor's Claim of Exemptions, and (2) the Trustee's Motion for Turnover. (Docs. 20, 21).

Under Florida's "wildcard" exemption, a debtor may claim personal property up to the value of $4,000.00 as exempt, unless he either claims or receives the benefit of a homestead exemption under the Florida Constitution. Fla. Stat. § 222.25(4). In this case, the Debtor is a trustee and beneficiary of the revocable trust that holds title to his residence. As a result, the Debtor may claim or receive the benefit of Florida's constitutional homestead exemption, and may not claim the "wildcard" exemption under § 222.25(4) of the Florida Statutes.

Additionally, under Florida law, a debtor may claim as exempt compensation paid "for personal services or labor." Fla. Stat. § 222.11(1)(a). In this case, the Debtor claimed as exempt a bank account maintained in his own name, but utilized by an urgent care clinic that he controls as sole officer and director. Under the circumstances of the case, the Court finds that the funds deposited into the account were the result of the Debtor's operation of a business, and were not for his personal services or labor. Accordingly, the Debt-

or's claim of exemption in the bank account should be disallowed.

## I. Background

The Debtor, John Joseph Im, is a physician. (Transcript, p. 7). The Debtor is married, and resides at 7722 Southeast 12th Circle, Ocala, Florida (the Residence) with his wife and children. (Doc. 85, ¶¶ 6, 7; Transcript, pp. 28–29).

In February of 2004, the Debtor formed a corporation known as Exceptional Urgent Care Center I, Inc. (the Clinic). (Doc. 85, ¶ 19). The Debtor was the sole shareholder of the Clinic at the time that it was formed, and is presently the sole officer and director of the Clinic. (Doc. 85, ¶¶ 18, 21; Transcript, p. 7). The Clinic is a walk-in urgent care clinic located in the Villages, Florida, and employs two medical assistants, a receptionist, a nurse practitioner, an imaging technician, and an office manager, in addition to the Debtor. (Doc. 85, ¶¶ 22, 23).

On July 25, 2008, the Debtor and his wife formed the Im–Brunning Living Trust (the Trust). (Doc. 85, ¶ 14). The Debtor and his wife are the sole settlors, trustees, and beneficiaries of the Trust. (Doc. 85, ¶ 15). On the date that the Trust was formed, the Debtor transferred all of his shares in the Clinic to the Trust, and the Debtor and his wife transferred their interest in the Residence to the Trust. (Doc. 85, ¶¶ 17, 21).

Prior to February of 2012, the Clinic utilized a checking account at Compass Bank for its daily operations, including the payment of bills, payroll, and business expenses. (Doc. 85, ¶ 26).

On February 10, 2012, the Debtor opened a checking account at SunTrust Bank in his own name (the SunTrust Account). The SunTrust Account was initially funded with $30,000.00 from the Compass Bank account, and the Clinic terminated its use of the Compass Bank account at that time. (Doc. 85, ¶¶ 28, 29, 30, 32).

After the SunTrust Account was opened, regular deposits were received into the Account from SunTrust Merchants. (Exhibit 10). According to the Debtor, these Merchant deposits represented "patient fee income" in circumstances where a patient at the Clinic made a payment by credit card. (Transcript, pp. 21–22, 31). Other deposits were received into the SunTrust Account by virtue of transfers from a separate "operations account." (Transcript, pp. 22, 31).

Withdrawals or debits were posted to the SunTrust Account for the Clinic's payroll service (ADP), and also for the mortgage payment on the office building that houses the Clinic. (Exhibit 10; Transcript, p. 25). The mortgage loan on the office is in the Debtor's individual name, and certain of the Debtor's personal expenses, such as his car payments and student loan payments, were also paid from the SunTrust Account. (Exhibit 10; Transcript, pp. 23–24).

From June of 2010 to May 31, 2012, the Debtor received bi-weekly payments for his salary in the net amount of $5,000.00. The payments were made through a direct deposit by the Clinic's payroll service into a separate checking account owned by the Debtor at Bank of America. (Exhibit 1, Schedule B; Exhibit 9; Transcript, pp. 17, 33). The Bank of America account was a personal checking account used by the Debtor to pay his living expenses. (Transcript, pp. 16–17).

On May, 31, 2012, the Debtor filed a petition under Chapter 7 of the Bankruptcy Code. The Debtor listed the Residence on his schedule of real property filed with the petition, and stated that he had "a beneficial interest in this asset under the

Im–Brunning Living Trust dated July 25, 2008." (Exhibit 1, Schedule A).

On his schedule of personal property, the Debtor listed (1) the Bank of America checking account with a value of $3,000.00, (2) a Bank of America savings account with a value of $400.00, and (3) the SunTrust checking account with a value of $92,176.14. (Exhibit 1, Schedule B; Doc. 85, ¶ 29).

The Debtor claimed the Bank of America accounts as exempt pursuant to § 222.25(4) of the Florida Statutes, and claimed the SunTrust Account as exempt pursuant to § 222.11(2)(a) of the Florida Statutes. (Exhibit 1, Schedule C). The Residence was not claimed as exempt.

The Chapter 7 Trustee objects to the exemption claimed by the Debtor in the Bank of America accounts. According to the Trustee, the Debtor is "receiving the benefits" of a homestead exemption, and therefore may not claim the wildcard exemption under § 222.25(4).

The Trustee also objects to the exemption claimed by the Debtor in the SunTrust Account. According to the Trustee, "the source of funds in said account were not from the performance of personal services and/or was not from regular compensation dictated by the terms of an arms-length employment agreement. Therefore, the Debtor is prohibited from claiming an exemption in and to the funds on hand in the account under § 222.11, Florida Statutes." (Doc. 21, ¶ 4).

## II. The Bank of America accounts

The Debtor claimed the Bank of America accounts as exempt pursuant to § 222.25(4) of the Florida Statutes. Section 222.25(4) provides:

**222.25. Other individual property of natural persons exempt from legal process**

The following property is exempt from attachment, garnishment, or other legal process:

(4) A debtor's interest in personal property, not to exceed $4,000.00, if the debtor does not claim or receive the benefits of a homestead exemption under s. 4, Art. X of the State Constitution.

Fla. Stat. § 222.25(4). Generally, the statute provides that a debtor may claim personal property up to the value of $4,000.00 as exempt, unless the debtor either "claims" a homestead exemption or "receives the benefits of" a homestead exemption under Art. X, § 4 of the Florida Constitution. *In re Rodale,* 452 B.R. 290, 293 (Bankr.M.D.Fla.2011).

 In this case, the Debtor may claim or receive the benefits of Florida's constitutional homestead exemption, and therefore may not claim the personal property exemption provided by § 222.25(4). Specifically, the Debtor is entitled to the homestead protections of the Florida Constitution, even though title to his Residence is held by the Im–Brunning Living Trust.

An individual must have an ownership interest in a residence that gives him or her the right to use and occupy it as his or her place of abode in order to qualify for Florida's Homestead exemption. The individual claiming the exemption need not hold fee simple title to the property. Instead, it is sufficient if the individual's legal or equitable interests give the individual the legal right to use and possess the property as a residence.

*In re Alexander,* 346 B.R. 546, 551 (Bankr. M.D.Fla.2006). Under these principles, it is generally recognized that an individual has a sufficient interest to qualify for Florida's homestead exemption where (1) title to his residence is held by a revocable trust, (2) the individual is the trustee and beneficiary of the trust, and (3) the individ-

ual has the right to live in the residence. *In re Alexander*, 346 B.R. at 551. See also, *In re Cocke*, 371 B.R. 554 (Bankr. M.D.Fla.2007), and *In re Edwards*, 356 B.R. 807, 811 (Bankr.M.D.Fla.2006)(The debtor, as grantor and trustee of the revocable living trust that held title to her residence, had a sufficient ownership interest in the residence to entitle her to the protections of the Florida homestead exemption.).

█ The Debtor and his wife in this case are the sole settlors, trustees, and beneficiaries of the Im–Brunning Living Trust that holds title to their Residence. (Doc. 85, ¶ 15). The Debtor testified that he lives in the Residence with his wife and children, that they lived in the Residence on the petition date, that they intend to retain the Residence, and that they have "no short-term plans to move out." (Transcript, pp. 28–29). Under these circumstances, the Debtor is entitled to the homestead exemption provided by the Florida Constitution, and therefore may not claim the personal property exemption provided by § 222.25(4) of the Florida Statutes.

### III. The SunTrust Account

The Debtor claimed the SunTrust Account as exempt pursuant to § 222.11(2)(a) of the Florida Statutes. Section 222.11(2)(a) provides that "[a]ll of the disposable earnings of a head of family whose disposable earnings are less than or equal to $750 a week are exempt from attachment or garnishment." Additionally, § 222.11(2)(b) provides that "[d]isposable earnings of a head of family, which are greater than $750 a week, may not be attached or garnished unless such person has agreed otherwise in writing."

█ The term "earnings" is defined in § 222.11(1)(a) as follows:

### 222.11. Exemption of wages from garnishment

(1) As used in this section, the term:

(a) "Earnings" includes compensation paid or payable, in money of a sum certain, *for personal services or labor* whether denominated as wages, salary, commission, or bonus.

Fla. Stat. § 222.11(1)(a)(Emphasis supplied). In determining whether money received by a debtor is compensation "for personal services or labor," courts in Florida generally agree that the "true test is whether the debtor's activities are a job or more in the nature of running a business." *In re Tobkin*, 2013 WL 1292679, at *2 (Bankr.S.D.Fla.) (citing *In re Zamora*, 187 B.R. 783, 785 (Bankr.S.D.Fla.1995)). To determine whether a debtor is entitled to the exemption under § 222.11(2), "the inquiry centers on whether or not compensation received falls under the rubric of salary resulting from employment or if it results from running a business." *Pellegrino v. Koeckritz Development of Boca Raton, LLC*, 2009 WL 1437813, at *4 (S.D.Fla.) (citing *Brock v. Westport Recovery Corp.*, 832 So.2d 209, 211 (Fla. 4th DCA 2002)).

█ In this case, the funds contained in the SunTrust Account do not qualify for the exemption provided by § 222.11(2).

Clearly, the Debtor runs the Clinic as a business. (Transcript, p. 7). He formed a corporation in 2004, and is its president, officer, and director. (Doc. 85, ¶¶ 18–21; Transcript, p. 7). The Clinic operates as a walk-in urgent care clinic with fixed business hours, and employs six staff members other than the Debtor. The staff members include other medical personnel, a receptionist, and a "practice manager" who handles the employees, pays bills, reviews contracts, and performs other office duties. (Doc. 85, ¶¶ 22, 23; Transcript, pp. 8–11, 19, 36).

The funds in the SunTrust Account "came from" the Clinic. (Transcript, p. 31). The Debtor testified that the deposits to the Account consisted of patient fees, when a patient at the Clinic paid by credit card, and transfers from a separate "operational account." (Transcript, pp. 21–22, 31).

The Debtor contends that the funds in the SunTrust Account are compensation for his personal services, because they represent a bonus paid to him in 2012. (Transcript, pp. 31–32, 36–37, 42). According to the Debtor, the SunTrust Account was opened as a personal account in February of 2012, and he discussed his receipt of a bonus with his accountant the same year. (Transcript, pp. 32, 39).

Based on the record, the Court finds that the funds in the Account resulted from the Debtor's operation of a business, and were not paid to him as a bonus for personal services within the meaning of § 222.11 of the Florida Statutes. In reaching this conclusion, the Court has considered the following factors:

█ 1. The corporation known as Exceptional Urgent Care Center I, Inc. (which is the Clinic) is owned by the Trust formed by the Debtor and his wife. (Doc. 85, ¶ 21, 22). The Debtor is the sole officer and director of the corporation, and acknowledges that he controls the corporation. (Transcript, p. 52). "Florida courts have held, in essence, that where the debtor controls the timing and amount of distributions from a family owned business, those distributions do not qualify as "earnings" for purposes of Fla Stat. § 222.11." *In re McDermott*, 2011 WL 740727, at *2 (Bankr.M.D.Fla.) (citing *In re Zamora*, 187 B.R. 783 (Bankr.S.D.Fla.1995), and *In re Manning*, 163 B.R. 380 (Bankr.S.D.Fla. 1994)).

2. The Debtor acknowledged that he has no employment agreement with the Clinic regarding his wages or bonuses. (Transcript, p. 44). "In order for compensation to be exempt under the statute, a debtor must receive regular compensation dictated by the terms of an arm's length employment agreement to perform services that are much like a job." *In re Holmes*, 414 B.R. 868, 870 (Bankr.S.D.Fla.2009) (citing *In re Zamora*, 187 B.R. at 784–85).

3. The Debtor's bi-weekly "salary" was direct-deposited into a separate account at Bank of America. (Exhibit 9; Transcript, pp. 17, 33). In other words, the Debtor maintained a separate account at a separate Bank to receive his regular "paychecks" from the Clinic, but the amount designated as a "bonus" was not deposited into the personal account with his salary. (Transcript, pp. 21–22).

4. The timing and amount of the "bonus" was unusual in relation to the Debtor's prior compensation and the filing of the bankruptcy case. The Debtor had never received a bonus since the commencement of the Clinic's operations in 2004, and asserts that the sum of $92,176.14 was distributed to him as his first bonus in 2012. (Transcript, pp. 42–43). The SunTrust Account was opened on February 10, 2012, with an initial deposit of $30,000.00, and the Debtor filed his bankruptcy petition on May 31, 2012, when the Account contained $92,176.14. See *In re McDermott*, 425 B.R. 848 (Bankr. M.D.Fla.2010), *aff'd*, 2011 WL 740727, at *2 (Distributions to the debtor were not exempt under § 222.11, where the "payments resumed and increased during the months just prior to" the filing of a bankruptcy case, and where the payments were significant in comparison to the debtor's prior compensation.)

5. The SunTrust Account was opened to replace an account previously used by the Clinic for its daily operations. The

initial deposit into the SunTrust Account was made from the Clinic's prior operating account, and the Clinic terminated its use of the prior account at the same time. (Doc. 85, ¶¶ 28, 29, 30, 32). Patient fees and other operating funds were deposited directly into the Account. (Transcript, pp. 21–22, 31). Although the Account was used to pay certain personal expenses of the Debtor, it was also used to pay business expenses of the Clinic, such as disbursements to the Clinic's payroll service. (Exhibit 10; Transcript, pp. 23–25). See *Vining v. Segal*, 731 So.2d 826, 827 (Fla. 3d DCA 1999) (The funds in an account did not qualify for the exemption provided by § 222.11, where the account was used for both personal and business purposes in "indeterminable" proportions.)

Based on these factors, the Court finds that the funds deposited into the SunTrust Account were the result of the Debtor's operation of a business, and were not for the Debtor's personal services or labor. Consequently, the Debtor may not claim the SunTrust Account as exempt pursuant to § 222.11(2) of the Florida Statutes, and the Trustee's objection to the exemption claimed by the Debtor in the Account should be sustained.

## IV. Conclusion

The Trustee objected to the exemption claimed by the Debtor in two accounts at Bank of America, and a checking account at SunTrust.

Under Florida's "wildcard" exemption, a debtor may claim personal property up to the value of $4,000.00 as exempt, unless he either claims or receives the benefit of a homestead exemption under the Florida Constitution. Fla. Stat. § 222.25(4). In this case, the Debtor is a trustee and beneficiary of the revocable trust that holds title to his Residence. As a result, the Debtor may claim or receive the bene-

fits of Florida's constitutional homestead exemption, and may not claim the Bank of America accounts as exempt under the "wildcard" exemption provided by § 222.25(4) of the Florida Statutes.

Additionally, under Florida law, a debtor may claim as exempt compensation paid "for personal services or labor." Fla. Stat. § 222.11(1)(a). In this case, the Debtor claimed as exempt a bank account maintained in his own name, but utilized by an urgent care clinic that he controls as sole officer and director. Under the circumstances of the case, the Court finds that the funds deposited into the account were the result of the Debtor's operation of a business, and were not for his personal services or labor. Accordingly, the Debtor may not claim the SunTrust Account as exempt under the exemption provided by § 222.11 of the Florida Statutes.

Accordingly:

**IT IS ORDERED** that:

1. The Trustee's Objection to Debtor's Claim of Exemptions is sustained to the extent set forth in this Order.

2. The exemptions claimed by the Debtor are disallowed with respect to (1) Bank of America checking account # 2538, (2) Bank of America savings account # 9486, and (3) SunTrust Bank checking account # 3440.

3. The Trustee's Motion for Turnover is granted as set forth in this Order, and the Debtor is directed to turn over to the Trustee (1) the Bank of America checking account # 2538, (2) the Bank of America savings account # 9486, and (3) the SunTrust checking account # 3440.